ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| GLORIA OCASIO FLORES, JORGE LUIS LÓPEZ CABALLERO, MARGARITA LÓPEZ OCASIO, LUZ MARÍA LÓPEZ OCASIO, JORGE LUIS LÓPEZ OCASIO Y OTROS | | ***Certiorari*** procedente del Tribunal de Primera Instancia, Sala Superior de Caguas |
|---|---|---|
| RECURRIDOS | KLCE202301409 | Caso Número: CG2022CV02066 |
| v. | | |
| HOSPITAL MENONITA CAGUAS Y OTROS | | Sobre: |
| PETICIONARIOS | | Impericia Médica, Daños |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de enero de 2024.

Comparece la parte peticionaria Pediatric Professionals PSC (en adelante, Pediatric Professionals) mediante recurso de *Certiorari* y nos solicita la revisión de la *Resolución* emitida el 10 de noviembre de 2023 y notificada el 16 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, TPI). Mediante este dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación por Prescripción* presentada el 11 de enero de 2023 por Pediatric Professionals.

Por los fundamentos que expondremos, se deniega la expedición del presente recurso de *Certiorari.*

**I**

El 10 de marzo de 2021, la Sra. Gloria Ocasio Flores, *et als.*,[1] presentó ante el TPI bajo el Caso Núm. **CG2021CV00595** una *Demanda* sobre daños y perjuicios en contra del Hospital Menonita de Caguas, del Dr. Harry Ruiz Figueroa y de la Sociedad Legal de Gananciales compuesta por su esposa Jane Doe-Ruiz[2] y él, del Dr. David Acevedo Morales y de la Sociedad Legal de Gananciales compuesta por su esposa Jane Doe-Acevedo y él, del Dr. Jorge Cordero Soto y de la Sociedad Legal de Gananciales compuesta por su esposa Jane Doe-Cordero y él, del Dr. Rafael López Torres y de la Sociedad Legal de Gananciales compuesta por su esposa Jane Doe-López y él, y del Dr. Roberto De Varona Carrión y de la Sociedad Legal de Gananciales compuesta por su esposa Jane Doe-De y él. Además, se incluyeron varias partes demandadas de nombres desconocidos designadas con los nombres ficticios siguientes: Compañía Aseguradora "X", "W", "Y", y "Z".[3]

En cuanto al Hospital Menonita de Caguas, se alegó, en lo pertinente, lo siguiente:

> "45. El Hospital Menonita de Caguas le responde a los aquí demandantes **por los actos y omisiones negligentes tanto de sus agentes y contratistas independientes como de sus empleados** a tenor con las disposiciones de los artículos 1802 y 1803 del Código Civil de Puerto Rico.
>
> 46. El Hospital Menonita de Caguas responde **por los actos y omisiones negligentes de su personal médico, técnico, de enfermería y de sala de emergencias** a tenor con las disposiciones del artículo 1803 del Código Civil de Puerto Rico." (énfasis suplido).

---

[1] Apéndice del *Certiorari*, págs. 1-8. La parte demandante está compuesta por la Sra. Gloria Ocasio Flores, el Sr. José Luis López Caballero, la Sra. Margarita López Ocasio, la Sra. Luz María López Ocasio, la Sra. Luz María López Ocasio, el Sr. Jorge López Ocasio, la Sra. Francisca Ocasio Flores, el Sr. Mario Ocasio Flores, la Sra. María Antonia Ocasio, Sra. Damasa Ocasio, el Sr. Andrés Ocasio, el Sr. José Manuel Ocasio, el Sr. Juan Daniel Ocasio, y la Sra. Teresa Ocasio Flores.

[2] Las esposas de los médicos demandados fueron incluidas en la demanda como partes de nombres desconocidos denominadas con el nombre ficticio Jane Doe.

[3] En cuanto a estas partes, en la demanda se alegó lo siguiente:
> "Que la Compañías Aseguradoras "X", "W", "y" y "'Z", son entidades y/o corporaciones organizadas bajo las Leyes del Estado Libre Asociado de Puerto Rico, que al momento se desconoce su identidad y responden por los actos y omisiones negligentes de sus aquí asegurados." Apéndice del *Certiorari*, pág. 7.

En síntesis, en la demanda se solicitó una indemnización por los daños y perjuicios sufridos a causa de la alegada falta de pericia profesional de las partes demandadas al brindarle tratamiento médico a la Sra. María Ocasio Flores el 11 y 13 de marzo de 2020 en el Hospital Menonita de Caguas. En específico, se alegó los siguiente:

"20. Que el 11 de marzo de 2020, el aquí co-demandado Dr. Harry Ruiz Figueroa le realizó una colonoscopía ambulatoria a la Sra. María Ocasio Flores en el Hospital Menonita de Caguas.

21. Que el viernes, 13 de marzo de 2020, María Ocasio fue llevada a la sala de emergencias del Hospital Menonita Caguas debido a decaimiento, debilidad y que no se sentía bien.

22. Que según el r[é]cord médico fue atendida por el co-demandado Dr. David Acevedo Morales como a eso de las 15:12.

23.Que se llevó un a cabo un CT Scan que demostró perforación intestinal.

24. Según el r[é]cord médico los hallazgos de dicho estudio fueron informados a los co-demandados doctor Cordero y Dr. Ruiz Figueroa.

25. Que la paciente señora María Ocasio fue admitida al hospital con diagnóstico de perforación.

26. Que la paciente fue llevada a sala de operaciones y comenzó la cirugía como a eso de las 9:15 pm, según indica el r[é]cord médico.

27. La cirugía fue llevada a cabo por el aquí co-demandado Dr. Jorge Cordero Soto.

28. La anestesia fue administrada por el co-demandado Dr. Rafael López Torres.

29. Que la cirugía terminó como a eso de las 10:00pm.

30. Que según el r[é]cord médico la paciente fue transportada a eso de las 10:50 pm a ICU críticamente enferma con presión de 91/50, HR 14.

31. Que en ICU la condición de la paciente deterioró aún más y se activó clave verde.

32. La paciente María Ocasio fue declarada muerta, el 13 de marzo de 2020 a eso de las 11:36 pm. Tenía 79 años de edad.

33. Según el r[é]cord médico la causa de muerte fue perforación y sepsis."[4]

El 25 de junio de 2021, la Sra. Gloria Ocasio Flores, *et als.,* presentaron una *Moción Solicitando Desistimiento Sin Perjuicio.*[5] En atención a esta solicitud, el 25 de junio de 2021, notificada el 1 de julio de 2021, el TPI dictó *Sentencia* desestimando sin perjuicio la demanda presentada por la parte recurrida en el Caso Núm. **CG2021CV00595**.[6]

El 22 de junio de 2022, la Sra. Gloria Ocasio Flores, *et als.,*[7] presentaron ante el TPI bajo el presente caso[8] una *Demanda* sobre daños y perjuicios, por los mismos hechos, en contra del Hospital Menonita de Caguas y del Dr. David Acevedo Morales y de la Sociedad Legal de Gananciales compuesta por su esposa Jane Doe-Acevedo.[9] Además, se incluyeron varias partes demandadas de nombres desconocidos designadas con los nombres ficticios siguientes: Dr. John Doe y Dr. Richard Roe y Richard Doe; Corporaciones A, B & C; Sociedades Profesionales X & Y; y Compañías Aseguradoras A & B.[10]

---

[4] Apéndice del *Certiorari*, págs. 4-5.
[5] Apéndice del *Certiorari*, págs. 9-10.
[6] Apéndice del *Certiorari*, págs. 11-12.
[7] La parte demandante en el presente caso está compuesta por la Sra. Gloria Ocasio Flores, el Sr. José Luis López Caballero, la Sra. Margarita López Ocasio, la Sra. Luz María López Ocasio, y el Sr. Jorge López Ocasio.
[8] Caso Núm. **CG2021CV00595.**
[9] Apéndice del *Certiorari*, págs. 13-19.
[10] En cuanto a estas partes, se alegó, entre otras cosas, lo siguiente:
"8. Los codemandados, Dr. John Doe y Dr. Richard Roe y Richard Doe, cuyos nombres se desconocen, son ciudadanos del Estado Libre Asociado de Puerto Rico, y son responsables solidarios ante los demandantes.
9. Las codemandadas Corporaciones A, B & C son entidades y/o corporaciones organizadas bajo las Leyes del Estado Libre Asociado de Puerto Rico, y son responsables solidariamente ante los demandantes por haberle brindado servicios negligentes que contribuyeron a la muerte prematura de la difunta María Ocasio Flores.
10. Las Sociedades Profesionales X & Y son entidades y/o corporaciones organizadas bajo las Leyes del Estado Libre Asociado de Puerto Rico, y son responsables solidariamente ante los demandantes por haberle brindado servicios negligentes que contribuyeron a la muerte prematura de la difunta María Ocasio Flores.
11. Las Compañías Aseguradoras A & B son entidades y/o corporaciones organizadas bajo las leyes del Estado Libre Asociado de Puerto Rico que expidieron pólizas de responsabilidad a nombre de los codemandados y/o sus Sociedades Profesionales y/o Corporaciones responsables, que

El 7 de septiembre de 2022, la parte recurrida presentó una *Moción Solicitando Permiso para Enmendar Demanda* acompañada de una *Primera Demanda Enmendada.*[11] En su moción, la parte recurrida alegó que advino en conocimiento de que la compañía Pediatrics Professional administraba y operaba la sala de emergencias del Hospital Menonita de Caguas y solicitó autorización para enmendar la demanda con el fin de incluirlo como parte demandada en el pleito.

Luego de varios trámites procesales, el 11 de enero de 2023, Pediatrics Professional presentó una *Moción de Desestimación por Prescripción.*[12] En su moción, Pediatrics Professional solicitó la desestimación de la demanda a su favor al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), alegando que la reclamación en su contra estaba prescrita por haber sido incluido en el pleito transcurrido el término prescriptivo de un (1) año establecido en el Código Civil para presentar una reclamación para exigir responsabilidad extracontractual. Alegó que en la demanda no se incluyó ni se hizo alegación alguna contra una entidad de nombre conocido o desconocido que administrara y operara la sala de emergencias del Hospital Menonita de Caguas; y que:

> "[...] [c]ontra la única parte que se reclamó en la Demanda en el caso civil CG2021CV00595 por los supuestos actos y omisiones del personal de sala de emergencia, tanto contratistas como empleados, fue al demandado Hospital Menonita de Caguas. [...] Fuera de dichas alegaciones contra dicho hospital codemandado, no se hacen otras alegaciones específicas contra otros demandados por la administración y operación de la sala de emergencia."[13]

Además, alegó que el haber incluido a la parte de nombre desconocido designada con el nombre ficticio "Corporación "X" en

---

cubren los actos por los que se reclaman." Apéndice del *Certiorari*, pág. 14.
[11] Apéndice del *Certiorari*, págs. 20-29.
[12] Apéndice del *Certiorari*, págs. 30-37.
[13] Apéndice del *Certiorari*, pág. 33.

la demanda no tuvo el efecto de interrumpir el término prescriptivo en cuanto a Pediatrics Professional.[14] Finalmente, añadió que el desconocimiento de la identidad de Pediatrics Professional se debió a la falta de diligencia de la parte recurrida.

El 30 de enero de 2023, la parte recurrida presentó su *Oposición a Moción de Desestimación*.[15] En síntesis, se opuso a la solicitud de desestimación argumentando que la interrupción de la prescripción en cuanto al Dr. David Acevedo Morales aprovechó por igual a Pediatrics Professional, pues entre estas partes existía una relación de solidaridad perfecta. Además, alegó que fue diligente en la tramitación de su causa de acción; y que, una vez advino en conocimiento de la existencia de Pediatrics Professional, procedió a enmendar la demanda para incluirlo en el pleito.

Finalmente, el 10 de noviembre de 2023, notificada el 16 de noviembre de 2023, el TPI emitió la *Resolución* recurrida, mediante la cual declaró No Ha Lugar de plano la *Moción de Desestimación por Prescripción* presentada por Pediatric Professionals.[16]

Inconforme con la determinación del TPI, Pediatric Professionals acudió ante nos el 12 de diciembre de 2023 mediante el presente recurso de *Certiorari,* en el cual señala la comisión de los errores siguientes:

> **Primer Error:** Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Prescripción, a pesar de que la parte recurrida nunca interrumpió el término prescriptivo en lo que a Pediatric respecta.

> **Segundo Error:** Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Prescripción, a pesar de que la causa de acción de la parte recurrida en lo que a Pediatric respecta venció el 13 de marzo de 2021.

> **Tercer Error:** Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Prescripción, a pesar de que en la Demanda del caso

---

[14] Véase, incisos 29-32, Apéndice del *Certiorari*, págs. 36-37.
[15] Apéndice del *Certiorari*, págs. 46-52.
[16] Apéndice del *Certiorari*, págs. 63-65.

civil Núm. CG2021CV00595 nunca se incluyó expresamente como parte codemandada a Pediatric.

**Cuarto Error:** Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Prescripción, a pesar de que en la Demanda del caso civil Núm. CG2021CV00595 nunca se incluyó como demandado de nombre desconocido a la entidad encargada de administrar u operar la sala de emergencias del Hospital Menonita de Caguas.

**Quinto Error:** Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Prescripción, a pesar de que en la Demanda del caso civil Núm. CG2021CV00595 no se hicieron alegaciones de negligencia propia cometida por Pediatric.

**Sexto Error:** Erró el Tribunal de Primera Instancia al declarar no ha lugar la Moción de Desestimación por Prescripción, a pesar de que en la Demanda del caso civil Núm. CG2021CV00595 no se hicieron alegaciones de negligencia propia cometida por un demandado de nombre desconocido encargado de administrar u operar la sala de emergencias del Hospital Menonita de Caguas.

El 22 de diciembre de 2023, la parte recurrida presentó su *Oposición a Expedición de Auto de Certiorari*.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800*

*Ponce de León v. AIG,* supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

### B.

La prescripción extintiva constituye una institución propia del derecho civil en materia sustantiva, la cual está intrínsecamente atada al ejercicio del derecho que se pretende vindicar. *Campos v. Cía. Fom. Ind.*, 153 DPR 137, 143 (2001); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 DPR 740, 742 (1981). Es una forma de extinción de un derecho, por la inercia de una parte en ejercer el mismo dentro del término prescrito por ley. *Maldonado Rivera v. Suárez y otros*, 195 DPR 182 (2016); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365 (2012); *S.L.G. Serrano-Báez v. Foot Loker*, 182 DPR 824, 831 (2011). Esta figura tiene como objetivo impedir la incertidumbre de las relaciones jurídicas y sancionar la inacción del ejercicio de los derechos. *Orraca López v. ELA*, 192 DPR 31, 49 (2014); *COSSEC et al. v. González López et al.*, 179 DPR 793 (2010).

Cónsono con lo anterior, el Artículo 1868 del Código Civil, *supra*,[17] dispone que las acciones de daños y perjuicios por culpa o

---

[17] El "Código Civil de Puerto Rico" de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como "Código Civil de Puerto Rico"

negligencia a las que se refiere el Artículo 1802 del Código Civil, *supra*, tienen un término de prescripción de un (1) año. *Col. Mayor Tecn. v. Rodríguez Fernández*, 194 DPR 635, 644 (2016); *Toro Rivera v. ELA*, 194 DPR 393, 415 (2015); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra. El punto de partida de dicho término es la fecha en que el agraviado conoció o debió haber conocido que sufrió un daño, quién lo ocasionó, así como los elementos necesarios para poder ejercitar su causa de acción. *Toro Rivera v. ELA*, supra; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra. En nuestro ordenamiento jurídico esta doctrina se conoce como la teoría cognoscitiva del daño. *COSSEC et al. v. González López et al.*, supra; *García Pérez v. Corp. Serv. Mujer*, 174 DPR 138 (2008); *Vera v. Dr. Bravo*, 161 DPR 308 (2004).

Una vez iniciado el término prescriptivo, corresponde a la parte agraviada expresar su voluntad de conservar su derecho a ser indemnizado. Nuestro ordenamiento reconoce tres maneras de manifestar la voluntad de conservar un derecho y que interrumpen efectivamente la prescripción extintiva, a saber: (1) el ejercicio de un derecho ante un foro judicial; (2) la reclamación extrajudicial de parte del titular de un derecho dirigida al deudor, y (3) el reconocimiento de una deuda por parte del deudor. Artículo 1873 del Código Civil, 31 LPRA sec. 5303. Una vez se interrumpe oportunamente la prescripción, el término prescriptivo comienza a transcurrir nuevamente. *SLG García-Villega v. ELA et al.*, 190 DPR 799, 816 (2014).

En materia de prescripción de la causa de acción bajo el Artículo 1802 del Código Civil, *supra*, en *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, se adoptó la figura de la solidaridad impropia (o *in solidum*) cuando coincide más de un causante de un daño.

---

de 2020, 31 LPRA sec. 5311 *et seq.* Los hechos que originan la presente controversia tomaron lugar durante la vigencia del Código Civil de 1930, por lo cual esta es la ley que aplica al caso.

Conforme a esta figura, si el perjudicado interesa conservar su causa de acción contra cada uno de los causantes del daño, deberá interrumpir la prescripción en relación con cada uno por separado y dentro del término prescriptivo de un (1) año establecido por el Artículo 1868 del Código Civil, *supra*. Véase, además, *Maldonado Rivera v. Suárez y otros*, supra.

Por otra parte, el Artículo 1803 del Código Civil, 31 LPRA ant. sec. 31 LPRA sec. 5142, recoge el principio de responsabilidad vicaria por virtud del cual, entre otros supuestos, un patrono podría ser responsabilizado extracontractualmente por los actos negligentes cometidos por alguno de sus empleados. En lo pertinente, el Artículo 1803 del Código Civil, *supra*, dispone lo siguiente:

> "La obligación que impone [el Artículo 1802 del Código Civil, 31 LPRA ant. sec. 5141] es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.
>
> [...]
>
> Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.
>
> [...]
>
> La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

El precitado artículo constituye una excepción especial al principio de la responsabilidad personal por los actos propios y solo puede aplicarse a los casos incluidos específicamente en el mismo. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465 (2022). De igual forma, establece una presunción legal de responsabilidad de las personas citadas en él. En atención a las relaciones de autoridad o superioridad que mantienen con los autores del daño

causado, la ley presume que le es imputable la causa de aquel por su propia culpa o negligencia. *Íd.*

La causa de acción establecida por Artículo 1803 del Código Civil, *supra*, consiste fundamentalmente en la culpa *in vigilando, in instruendo o in eligiendo* atribuible a las personas designadas estatutariamente como responsables. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 907 (2012). Se establece, pues, una presunción de culpa que puede consistir en una falta de vigilancia (culpa *in vigilando*), en una falta de instrucción (culpa *in instruendo*) o en una desacertada elección (culpa *in eligiendo*). *Íd.* Es decir, que, de haber sido el patrono diligente en vigilar, instruir o escoger a sus empleados, el daño no hubiese ocurrido. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra. Para activar esta presunción de culpa del patrono, un demandante debe establecer *prima facie*: (1) una relación de dependencia entre el patrono y el empleado, (2) que el empleado actuó en el desempeño de los ramos de su oficio con el propósito de servir y proteger los intereses del patrono, y que (3) el empleado tuvo culpa en el desempeño de esas funciones. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 983 (2021). El patrono puede liberarse de esta responsabilidad si demuestra que empleó toda la diligencia de un buen padre de familia. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra.

Se reconoce que, al amparo del Artículo 1803 del Código Civil, *supra*, los hospitales pueden ser responsables frente a un perjudicado por la falta de pericia atribuible al personal del hospital en el ámbito de sus funciones. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra; *Márquez Vega v. Martínez Rosado*, 116 DPR 397, 404-405 (1985). Al momento de adjudicar responsabilidad vicaria a los hospitales por los actos de los médicos que laboran en su institución, es importante considerar la relación jurídica existente entre estos. *Íd.*; *Fonseca et al. v. Hosp. HIMA*, 184 DPR

281, 288 (2012). El hospital responde vicariamente por los actos de aquellos médicos que son sus empleados; por aquellos médicos, que, aunque no forman parte de su fuerza laboral, son parte de la facultad o *staff*, encontrándose disponibles para consultas de otros médicos; por los médicos pertenecientes a concesionarios de franquicias exclusivas para prestar servicios en el hospital; y por aquellos médicos que sin ser empleados gozan de privilegios en la institución. *Íd.*; *Márquez Vega v. Martínez Rosado*, supra; *Núñez v. Cintrón*, 115 DPR 598 (1984); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 515-16 (2009).

Cónsono con lo anterior, se ha resuelto que la solidaridad impropia, no se extiende al régimen de responsabilidad vicaria establecido en el Artículo 1803 del Código Civil, *supra*. Al respecto, recientemente en *Pérez et al. v. Lares Medical et al.*, supra, pág. 989-890, se estableció que "la responsabilidad que surja entre el patrono y el empleado es una solidaria, más en su vertiente propia", por lo que "los actos interruptivos del término prescriptivo realizados contra el patrono o el empleado perjudican al otro por igual."

**III**

En su recurso de *Certiorari*, Pediatrics Professional señala, en esencia, que erró el TPI al denegar la solicitud de desestimación resolviendo que la reclamación presentada en su contra no estaba prescrita. En síntesis, Pediatrics Professional reiteró los argumentos expuestos en su solicitud de desestimación ante el TPI con respecto a que la parte recurrida no logró interrumpir el término prescriptivo en su contra mediante las alegaciones presentadas en la demanda del pleito original y la del presente.

Además, alegó que para resolver una moción de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, *supra*, al amparo de la doctrina de solidaridad perfecta, era necesario que

en la demanda se alegara que existía una relación entre el Dr. David Acevedo Morales y Pediatrics Professional, lo cual no se hizo.

En su alegato en oposición, la parte recurrida sostiene, de forma sincretizada, que existía una relación de solidaridad perfecta entre el Dr. David Acevedo Morales y Pediatrics Professional, por lo que la interrupción de la prescripción en cuanto al primero aprovechó por igual al segundo.

Tratándose la determinación recurrida de una denegatoria de una moción de carácter dispositivo, estamos facultados conforme a lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, para revisar esta determinación mediante un recurso de *certiorari*. Sin embargo, la expedición de un recurso de *certiorari* sigue siendo una decisión discrecional, la cual debemos ejercer tomando en consideración los criterios establecidos la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Evaluado el recurso ante nuestra consideración a la luz de estos criterios, concluimos que no existen motivos que justifiquen que ejerzamos nuestra función revisora en esta etapa de los procedimientos. Además, no surgen indicios de que haya mediado prejuicio, parcialidad o error craso y manifiesto por el Tribunal de Primera Instancia. La disposición de la decisión recurrida tampoco es contraria a derecho.

## IV

Por los fundamentos expuestos, se deniega la expedición del auto de *Certiorari*.

**NOTIFÍQUESE.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones